**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**TRACY MILLER,**

                    **Plaintiff,**

**v.**                                        **Case 2:9-cv-02152-JTF-cgc**

**CANADIAN NATIONAL RAILWAY CO. and**
**ILLINOIS CENTRAL RAILROAD CO.,**

                    **Defendants.**

---

**REPORT AND RECOMMENDATION ON**
**PLAINTIFF/COUNTER-DEFENDANT'S MOTION**
**AND RENEWED MOTIONS TO DISMISS COUNTERCLAIMS**

---

Before the Court are the following motions: Plaintiff/Counter-Defendant Tracy Miller's ("Miller") Motion to Dismiss Counterclaims (Docket Entry ("D.E.") #19) ("Motion to Dismiss"); Plaintiff/Counter-Defendant's Renewed Motion to Dismiss Counterclaims (D.E. #26) ("Second Motion to Dismiss"); and, Plaintiff/Counter-Defendant's Motion to Dismiss Counterclaims (D.E. #37) ("Third Motion to Dismiss"). The instant motions have been referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #62). For the reasons set forth herein, it is RECOMMENDED that Plaintiff/Counter-Defendant's Third Motion to Dismiss be DENIED and that Plaintiff/Counter-Defendant's Motion to Dismiss and Second Motion to Dismiss be DENIED AS MOOT.

1

## I.      Introduction

### a.   Initial Filings

On March 6, 2019, Miller filed his Complaint against Canadian National Railway Company ("CN") and Illinois Central Railroad Company ("IC"). (D.E. #1). On April 16, 2019, CN and IC, along with Third-Party Plaintiff Grand Trunk Corporation ("Grand Trunk"), filed its Answer, Affirmative and Other Defenses, and Counterclaims. (D.E. #15). On April 22, 2019, Miller filed his First Amended Complaint against CN and IC. (D.E. #18). On April 24, 2019, Miller filed his Motion to Dismiss Counterclaims / Third-Party Claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. #19, #20). On May 6, 2019, Defendants filed their First Amended Answer and Affirmative and Other Defenses to First Amended Complaint, and Defendants and Grand Trunk reiterated their Counterclaims / Third-Party Claims. (D.E. #21). On May 16, 2019, Miller renewed his Motion to Dismiss following Defendants and Grand Trunk's filing of their Counterclaims / Third-Party Claims in the First Amended Complaint. (D.E. #26).

### b.   Second Amended Complaint

On May 30, 2019, after obtaining leave of court, Miller filed his Second Amended Complaint against CN and IC. (D.E. #35). Miller alleges that he was employed by CN and IC[1] from 1994 until 2019 and was the highest ranking African-American employee in the United States. (Second Am. Compl. ¶ 1). Miller alleges that he suffered twelve years of intense frustration about being passed over for promotions in favor of white employees; his frustration

---

[1] CN is a Canadian corporation, and it operates its rail network in Canada and the United States. (Second Am. Compl. ¶ 6). IC is a wholly owned subsidiary of CN that operates in the United States. (*Id*. ¶ 7).

began at some point after 2006 with his last promotion and continued into 2018.   (*Id.* ¶¶ 2(a), 14-44).

Throughout December 2018, Miller continued to reflect on his career and reconsidered retirement.  (*Id.* ¶ 45).  On January 8, 2019, an official from Canadian Pacific Railway ("CP") contacted Miller, unsolicited, about potential employment with CP.  (*Id.* ¶ 46).  On January 17, 2019, CP offered Miller the position of Vice President, Operations in the United States.  (*Id.* ¶ 46).  Miller alleges that this position is "the counterpart at CP of the position that Defendants had not given Miller" on five separate occasions.  (*Id.* ¶ 46).  Miller did not accept CP's position immediately but "continued to weigh his options."  (*Id.* ¶ 47).

On January 21, 2019, Miller "exercised stock options he had earned and been awarded three or more years earlier under the CN Management Long-Term Incentive Plan ("MLTIP")." (*Id.* ¶ 48).  Later that same day, Kim Madigan ("Madigan"), Vice President of Human Resources, and CN's compensation director, Francois Jauvin ("Jauvin") called Miller to inquire if he was leaving the company given that he exercised his options.  (*Id.* ¶ 33, 49).  Miller replied that he was not because he "did not believe he had any obligation to inform Madigan whether he was or was not leaving CN."  (*Id.* ¶ 49).  At this time, Miller had still not accepted the position at CP. (*Id.* ¶ 49).   On January 22, 2019, Defendants sent Miller a "letter reminding him of 'confidentiality obligations and other restrictive covenants' found in the MLTIP."  (*Id.* ¶ 51 & Exh. C).

On January 28, 2019, Miller called Madigan to provide a two-week notice of his resignation.  (*Id.* ¶ 52).  Madigan reminded him of the "non-compete restrictive covenant that was contained in his annual stock option and Performance Share Units ("PSU") award letters."

(*Id.*)  Miller responded that he "expected to be treated the same as other employees who had left Defendants subject to non-competes but were allowed to continue their careers with competing railroads."  (*Id.*)  Madigan stated that Defendants would not release him from his non-compete. (*Id.*)  On January 29, 2019, Miller arrived ready to work but was told to leave the premises.  (*Id.* ¶ 53).  Unbeknownst to Miller, his employment was terminated by CN effective January 28, 2019.  (*Id.* ¶ 53).

On January 31, 2019, Miller emailed Madigan "to advise that he had accepted employment at CP."  (*Id.* ¶ 55 & Exh. E).  Miller was scheduled to begin employment with CP on February 12, 2019 as Vice President of Operations for the United States.  (*Id.* ¶ 55).  On February 1, 2019, CN's counsel sent a letter to Miller advising him that he was in breach of his contractual obligation not to compete against CN for two years after his employment ceased. (*Id.* ¶ 56).  The letter further accused Miller of fraudulent misrepresentations and advised that, if Miller were to begin employment with CP or any other competitor, CN would initiate legal action against him.  (*Id.*)  CN further demanded that Miller repay the monies he received upon the exercise of his stock options and threatened him with exemplary damages if they were forced to litigate.  (*Id.*)

Miller alleges that he is "not prohibited under the MLTIP or any other plan or document from exercising his vested stock options before he resigns his employment with CN."  (*Id.* ¶ 57). Even so, due to CN's "threats," Miller withdrew his acceptance of employment with CP and did not begin employment with CP at that time.  (*Id.* ¶ 58).  Miller alleges that CN was aware that he withdrew the acceptance.  (*Id.*)

4

Miller alleges that, upon information and belief, similarly situated white employees who left CN and were subject to the same non-competition covenant as Miller have been allowed to work for competitors covered by the non-compete without being required to return any stock options or PSUs that they exercised before leaving CN. (*Id*. ¶ 59). Three of these individuals are alleged to have left CN to work for CP. (*Id*. ¶ 59(d), 59(f), 59(g)).

Miller alleges that Defendants and Grand Trunk filed their Counterclaims / Third-Party Clams on April 16, 2019 only after he filed this lawsuit "even though the alleged facts which form the basis of the counterclaims were known to Defendants in January 2019." (*Id*. ¶ 63). Miller alleges that Defendants and Grand Trunk filed the Counterclaims / Third-Party Claims here "even though there is a pending lawsuit in Illinois state court brought by Miller seeking declaratory relief with respect to the enforceability of the non-compete covenants." (*Id*. ¶ 64). Plaintiff alleges that Defendants and Grand Trunk brought the Counterclaims / Third-Party Claims in this Court rather than in Illinois state court "to retaliate and punish Miller" for bringing this civil rights action. (*Id*. ¶¶ 64, 72-73).

Counts One and Two of the Second Amended Complaint allege race discrimination and retaliation under 42 U.S.C. § 1981. (*Id*. ¶¶ 65-76). Specifically, Miller alleges that Defendants discriminated against him on the basis of race by repeatedly failing to promote him and by enforcing the non-compete covenants against him. (*Id*. ¶¶ 68-70). Miller alleges that Defendants retaliated against him by threatening to sue him and by filing the Counterclaims / Third-Party Claims "only after he engaged in the protected activity of filing this lawsuit and an EEOC charge alleging race discrimination and retaliation" and only after he filed the Illinois state court action. (*Id*. ¶¶ 71-72). Miller alleges that, because of Defendants' actions, he has "sustained damages

from the loss of compensation and benefits he would have received, and the reputational and career advancement he would have realized had he not been passed over for promotion" by CN. (*Id.* ¶ 74).  Miller alleges that, also because of Defendants' actions, he has been "unable to realize the financial opportunity presented to him by CP in the form of compensation and benefits he would have received, and the reputational and career enhancement he would have realized." (*Id.* ¶ 75).

Count Three alleges intentional interference with business relationships.  (*Id.* ¶¶ 77-84). Miller alleges that he had a "prospective business relationship with CP, based on CP's job offer, which Miller accepted and wanted to accept." (*Id.* ¶ 78).  Miller alleges that Defendants were aware of this business relationship yet intentionally interfered with it in the following ways: (1) preventing him from entering into an employment relationship with CP; (2) threatening him with litigation to enforce the non-compete covenants; (3) demanding that he repay the monies that he realized upon the exercise of his stock options; (4) filing counterclaims / third-party claims against him; and, (5) seeking an excessive amount of damages and disgorgement of monies in an effort to intimidate Miller and further prevent him from accepting employment with CP.  (*Id.* ¶ 80).  Miller alleges that the intentional interference was motivated, in whole or in part, by his race and/or was done in retaliation for Miller objecting to Defendants use of race in their promotion decisions.  (*Id.* ¶ 81).  Miller states that the intentional interference also resulted in him being unable to realize the financial opportunity presented to him by CP in the form of compensation, benefits, and reputational and career enhancement.  (*Id.* ¶ 83).

    **c.   *Defendants' Second Amended Answer and Affirmative and Other Defenses to Second Amended Complaint, and Defendants and Grand Trunk's Counterclaims / Third Party-Claims***

On June 13, 2019, Defendants filed their Second Amended Answer and Affirmative and Other Defenses to First Amended Complaint, and Defendants and Grand Trunk included therein their Counterclaims / Third-Party Claims (hereinafter "Counterclaims / Third-Party Claims"). (D.E. #36).[2]

Defendants and Grand Trunk allege that, from 2006 until 2018, Miller was a General Manager with IC, which gave him access to an extensive amount of CN's confidential and trade-secret information. (Second Am. Compl., Counterclaims / Third-Party Claims, at 21 ¶ 14-22). Defendants and Grand Trunk state that high-level operations managers with Miller's level of training and knowledge are a "hot commodity in the industry and are viewed as a valuable asset to railroad companies." (*Id*. at 22 ¶ 19 – 23 ¶ 21, 24 ¶ 28 – 25 ¶ 32).

As part of Miller's compensation as a "key executive," Miller participated in CN's Supplemental Employment Retirement Plan ("SERP"), CN'S Long-Term Inventive Plan ("LTIP"),[3] and Restricted Share Units Plan ("RSU Plan"). (*Id*. at 23 ¶ 23). Beginning in 2019, the terms of the SERP by which Miller received certain accrued benefits were amended to include certain restrictive covenants, including a post-employment non-competition covenant and confidentiality covenant. (*Id*. at 23 ¶ 24, 25 ¶ 34 – 27 ¶ 41). Beginning in 2011, the terms of the award agreements by which Miller received stock options and restricted share units under the

---

[2]   Third-Party Grand Trunk is an indirectly owned subsidiary of CN and does business in the United States as CN. (Second Am. Answer, Counterclaims / Third-Party Claims at 20 ¶ 8).

[3]   The program Defendants and Grand Trunk refer to as LTIP, an abbreviation for Long-Term Incentive Plan, appears to be the same program as Miller refers to as MLTIP, an abbreviation for Management Long-Term Incentive Plan; however, the Court will utilize the designations provided by the respective parties.

LTIP and RSU Plan included the same restrictive covenants as SERP. (*Id.* at 23 ¶ 25, 28 ¶ 42 - 29 ¶ 51). Miller accepted stock options and RSUs under the terms of those award agreements, including their restrictive covenants, every year from 2011 until 2018. (*Id.*). Under the terms of the SERP and LTIP/RSU Plan agreements, Miller forfeits and CN may clawback any accrued benefits, stock options, and RSUs should he violated the restrictive covenants. (*Id.* at 23 ¶ 26).

Defendants and Grand Trunk allege that Miller exercised his vested stock options with CN in the amount of $998,183.04 on January 21, 2019. (*Id.* at 29 ¶¶ 52-53). Defendants and Grand Trunk state that the "exercise of such a large amount of stock options at a single time was unusual for any CN employee"; thus, CN immediately contacted him to ask whether he had plans to leave the company. (*Id.* at 30 ¶¶ 54-55). Miller informed CN "in no uncertain terms" that he had no intent or desire to leave the company. (*Id.* at 30 ¶ 55). Miller accepted the position of Vice President of Operations for CP, its direct competitor, on January 23, 2019. (*Id.* at 29 ¶¶ 52-53). Miller did not notify CN of his resignation until January 28, 2019 and did not notify CN that he had accepted a position with CP until January 31, 2019. (*Id.* 30 ¶¶ 58-59).

Defendants and Grand Trunk assert that, upon information and belief, "Miller is currently working for CP in a non-competitive position, but seeks to (and intends to) work for CP in the competitive position of Vice President, Operations." (*Id.* at 30 ¶ 60). Defendants and Grand Trunk aver that Miller has also demonstrated his desire and intention to accept the competitive position in the Illinois state court action. (*Id.* at 30 ¶ 61).

Count One of the Counterclaims / Third-Party Claims seeks a declaratory judgment pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure that the restrictive covenant provisions contained in the SERP and LTIP/RSU Plan are valid and

enforceable.  (*Id*. at 31 ¶ 63- 32 ¶ 69).   Count Two of the Counterclaims / Third-Party Claims seeks a declaratory judgment pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure that Miller has forfeited any accrued benefits under the SERP.  (*Id*. at 32 ¶ 70 – 22 ¶ 81).   Count Three alleges that Miller has breached the LTIP/RSU Plan by "accepting employment with CP," "commencing such employment in a similar role" as his role at IC, and "engaging in competitive business activities within the United States, and within the two-year period."  (*Id*. at 33  ¶ 88; *see also id.* at 33 ¶ 82 – 34 ¶ 92).   Count Four alleges that Miller fraudulently misrepresented his intent to remain with CN at the time he exercised his stock options.  (*Id*. at 35 ¶¶ 93-99).   Count Five alleges that Miller received unjust enrichment "by retaining the value of his exercise of the stock options while failing to abide by the restrictive covenants in his award agreements."  (*Id*. at 36 ¶ 100 – 37 ¶ 108).

### d.  *Miller's Third Motion to Dismiss Counterclaims / Third Party Claims*

On June 17, 2017, Miller filed his Third Motion to Dismiss following Defendants and Grand Trunk's filing of their Counterclaims / Third-Party Claims in the Second Amended Complaint.  (D.E. #37, #38).   Miller argues that this Court cannot and should not exercise supplemental jurisdiction over the Counterclaims / Third-Party Claims pursuant to 28 U.S.C. Section 1367; thus, Miller asserts that the Counterclaims / Third-Party Claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Miller also asserts that Defendants and Grand Trunk have not adequately plead their Counterclaims / Third-Party Claims for breach of contract and unjust enrichment and that they have not plead fraudulent misrepresentation with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; thus, Miller contends that these Counterclaims / Third-

Party Claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### e. *Defendants and Grand Trunk's Response to Miller's Third Motion to Dismiss Counterclaims / Third-Party Claims*

On July 15, 2019, Defendants and Grand Trunk filed their Response to Miller's Third Motion to Dismiss Counterclaims / Third-Party Claims.  (D.E. #43).  Defendants and Grand Trunk argue that the Counterclaims / Third-Party Claims are compulsory under Rule 13 of the Federal Rules of Civil Procedure.  They further assert that, even if this Court were to deem the Counterclaims / Third-Party Claims as permissive, this Court should elect to exercise supplemental jurisdiction over them under 28 U.S.C. Sections 1367(c)(2) and (c)(4).  Finally, Defendants and Grand Trunk assert that all of their Counterclaims / Third-Party Claims are adequately plead to survive challenge pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### f. *Miller's Reply in Support of his Third Motion to Dismiss Counterclaims / Third-Party Claims*

On July 29, 2019, Miller filed his Reply in Support of his Third Motion to Dismiss Counterclaims / Third-Party Claims.  (D.E. #45).  Miller asserts that the Counterclaims / Third-Party Claims are not compulsory and further argues that this Court cannot and should not exercise supplemental jurisdiction over them; thus, Miller continues to assert that the Counterclaims / Third-Party Claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Miller also continues to argue that the Counterclaims / Third-Party Claims for breach of contract, fraudulent misrepresentation,

and unjust enrichment are not adequately plead and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    Analysis

### a.   Miller's First and Second Motions to Dismiss

At the conclusion of the filings set forth above, the operative pleadings in the instant case are (1) the Second Amended Complaint and (2) Defendants' Second Amended Answer and Affirmative and Other Defenses to First Amended Complaint, and Defendants and Grand Trunk's Counterclaims / Third-Party Claims.   Miller's Third Motion to Dismiss attacks Defendants and Grand Trunk's Counterclaims / Third-Claims that are contained in the Second Amended Answer.   Accordingly, it is RECOMMENDED that Miller's Motion to Dismiss Counterclaims / Third-Party Claims contained in the Answer and Miller's Renewed Motion to Dismiss Counterclaims / Third-Party Claims contained in the Amended Answer should be DENIED AS MOOT.

### b.   Miller's Third Motion to Dismiss

#### i.   Rule 12(b)(1) Challenges to Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for lack of subject-matter jurisdiction.   *Id.*   As a threshold issue, Defendants and Grand Trunk assert that their Counterclaims / Third-Party Claims are compulsory and that "[c]ompulsory counterclaims require no independent source of subject matter jurisdiction."   *See General Cable Corp. v. Highlander*, 447 F. Supp. 2d 879, 892 (S.D. Ohio May 15, 2006).   Rule 13 of the Federal Rules of Civil Procedure defines compulsory counterclaims as follows:

> **(1)  *In General.*** A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim;

11

> **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; . . . .[4]

> **(c) Relief Sought in Counterclaim.** A counterclaim need not diminish or defeat the recovery sought by the opposing party. It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party.

*Id*. "It is well established that an opposing party's failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action." *Sanders v. First Nat. Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (citing *Baker v. Golden Seal Liquors, Inc.*, 417 U.S. 467 n.1 (1974)).

In *Maddox v. Kentucky Financial Company, Incorporated*, 736 F.2d 380 (6th Cir. 1984), the Sixth Circuit provided four factors to aid in the determination of whether a counterclaim "arises out of the same transaction": (1) there a logical relationship between the two claims; (2) the issues of fact and law raised by the claim and counterclaim are largely the same; (3) *res judicata* would bar a subsequent suit on the counterclaim if the court were not to take jurisdiction; and, (4) substantially the same evidence would support or refute both the claim and counterclaim. *Id*. at 382. A court may also consider whether the interests of judicial economy and efficiency require that the claim and counterclaim be tried together. *Id*. at 383.

Here, Defendants and Grand Trunk summarize that Miller has alleged that Defendants' enforcement of his restrictive covenant is racially discriminatory. On the contrary, Defendants and Grand Trunk argue that a finding that Defendants "had a protectable interest and obligation to protect their trade secrets and confidential information" and that this interest "is a defense to Miller's accusations that [Defendants'] motivations were discriminatory." (*Id*.) Defendants

---

[4]  Rule 13(a)(1)(B) requires that a compulsory counterclaim "does not require adding another party over whom the court cannot acquire jurisdiction." *Id*. Although Grand Trunk is added as a Third-Party by the filing of the Counterclaims / Third-Party Claims, Miller does not argue that this Court may not acquire jurisdiction over it.

further aver that "demonstrating that [Defendants] were acting consistently in their enforcement of the non-compete against similarly situated individuals would not only support the fact that a valid non-compete exists, but it would rebut the inference of discrimination." (*Id*. at 7-8).

Miller responds that Defendants and Grand Trunk's Counterclaims / Third-Party Claims do not meet the logical-relationship test because there is a critical distinction between whether the contracts were valid and the manner in which they were enforced. Miller states that the evidence supporting his claim pertains to Defendants' racially discriminatory and retaliatory actions. Miller argues that this evidence does not overlap that which would be needed to support Defendants and Grand Trunk's position that the non-compete agreement was enforceable. Miller further avers that this Court can resolve his claims "without the need to analyze the enforceability of the non-compete or the related state law claims alleging that Miller violated the non-compete agreement."

Upon review, it is RECOMMENDED that a broader view of the logical relationship test is appropriate here.[5] The crux of this case is the enforcement of the non-compete agreement. Miller believes that the non-compete agreement was enforced against him and not against other similarly situated employees due to his race. Defendants and Grand Trunk assert it was enforced against him because it was a valid agreement and because there was a legitimate business need in protecting their trade secrets and confidential information. Most importantly, Defendants and Grand Trunk believe that proof on the full scope of the decision would rebut Miller's claims of racial discrimination and retaliation.

---

[5] The Court makes this recommendation even though the Illinois state court reasoned that "the two actions are not substantially similar" and that, "hypothetically, Plaintiff could prevail in his Federal Action even if the restrictive covenants are found unenforceable under Illinois law," *see* Miller's Third Mot. to Dismiss at 11 & Exh. 1 at 9-10), because this Court is not bound by the Illinois court's reasoning but is required to assess it under the aforementioned federal rules and laws.

Although there may be aspects of Defendants and Grand Trunk's Counterclaims / Third-Party claims that might require an expanded scope of proof, the central issue is determining the reasoning for the enforcement of the non-compete agreement against Miller.  Thus, the issues of fact and law raised by the Second Amended Complaint and by the Counterclaims / Third-Party Claims are not identical but are "largely the same," and substantially the same evidence would support or refute both the claim and counterclaim.  Further, as set forth above, a party's failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action. *Sanders v. First Nat. Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (citing *Baker v. Golden Seal Liquors, Inc.*, 417 U.S. 467 n.1 (1974)).  Thus, it is RECOMMENDED that subject matter jurisdiction exists over these compulsory counterclaims and that the Counterclaims / Third-Party Claims should not be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[6]

Although it is RECOMMENDED that this Court has subject matter jurisdiction over the Counterclaims / Third-Party Claims because they are compulsory, should the District Court determine that they are not, the parties further argue whether this Court should exercise supplemental jurisdiction over them pursuant to 28 U.S.C. Section 1367.  A district court may exercise supplemental jurisdiction over all claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  "Claims form part of the same case or controversy when they derive from a common

---

[6]  Miller further asserts that the Counterclaims / Third-Party Claims are not compulsory pursuant to Rule 13(a)(2)(A) of the Federal Rules of Civil Procedure because his Illinois state court action was pending before Defendants and Grand Trunk brought their Counterclaims / Third-Party Claims in this Court.  Rule 13(a)(2)(A) states that the pleader need not state the claim if, "when the actions was commenced, the claim was the subject of another pending action."  *Id*.  Although Miller's claim was part of another pending action, Defendants and Grand Trunk's Counterclaims / Third-Party claims were not.  Accordingly, it is RECOMMENDED that the exception under Rule 13(a)(2)(A) does not apply here.

nucleus of operative facts." *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (internal quotation marks omitted). For claims to form part of the same case or controversy, "only a loose factual connection is necessary." *Blakely v. United States*, 276 F.3d 853, 862 (6th Cir. 2002) (citing *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). There are four limited reasons why a district court may decline to exercise supplemental jurisdiction: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or, (4) exceptional circumstances provide a compelling reason for declining jurisdiction. 28 U.S.C. § 1367.

Here, Miller first argues that the Counterclaims / Third-Party Claims do not form part of the same case or controversy such that this Court may exercise supplemental jurisdiction over them. However, as set forth, *supra*, in the Court's discussion of whether the Counterclaims / Third-Party Claims should be deemed compulsory, the central issue in this case is determining the reasoning for the enforcement of the non-compete agreement against Miller. Miller avers that the motivation was his race; Defendants assert that it was enforced against him because it was a valid agreement and because there was a legitimate business need in protecting their trade secrets and confidential information. Thus, it is RECOMMENDED that the claims and Counterclaims / Third-Party Claims largely seek to provide different answers to the same question. Accordingly, it is RECOMMENDED that the Counterclaims / Third-Party Claims are part of the same case or controversy for purposes of exercising supplemental jurisdiction.

Miller argues that, even if this Court may exercise supplemental jurisdiction, it should decline to do so because the Counterclaims / Third-Party Claims predominate over his own

claims and because exceptional circumstances provide a compelling reason for declining jurisdiction. As to the first assertion, it is RECOMMENDED that the Counterclaims / Third-Party Claims do not predominate over Miller's claim but instead may, if believed, explain Defendants' reasoning for their actions and rebut the inference of discrimination. As to the second assertion, Miller believes that his pending Illinois state court action constitutes an exceptional circumstance; however, it is not exceptional that other lawsuits regarding an employment dispute are pending in other jurisdictions. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citation omitted) ("Generally, as between state and federal courts, the rule is that 'the pendency of an action in state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction . . . ."); *Epps v. Lauderdale Cty.*, 139 F. Supp. 2d 859, 865 (W.D. Tenn. 2000) (citing *Colorado River*, 424 U.S. at 817) (same). Therefore, it is RECOMMENDED that no exceptional circumstances should compel this Court to decline exercising supplemental jurisdiction. Accordingly, it is RECOMMENDED that the Court should exercise supplemental jurisdiction over the Counterclaims / Third-Party Claims pursuant to 28 U.S.C. Section 1367.

### ii.   *Rule 12(b)(6) Challenges to the Adequacy of the Pleadings*

Next, Miller asserts that Defendants and Grand Trunk have not adequately plead their breach of contract and unjust enrichment claims to survive a challenge under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in

the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . .claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

Under Illinois law, which the parties agree applies to the breach-of-contract claim, such a claim requires the existence of a valid contract, Defendants' and Grand Trunk's valid performance under that contract, Miller's breach of the contract, and damages as a result of the

17

breach. *Kelly v. Orrico*, 8 N.E.3d 1055, 1061 (Ill. App. Ct. 2d Dist. 2014) (citations omitted); *Payne v. Mill Race Inn*, 504 N.E.2d 193, 196-97 (Ill. App. Ct. 2d Dist. 1987). The parties dispute whether Miller has breached the contract.[7] Miller states that he accepted the Vice President of Operations position with CP, withdrew his acceptance, and then began working for CP in a position Defendants and Grand Trunk admit was a "non-competitive" one. (*See* Counterclaim / Third-Party Claim at 30 ¶ 60). Defendants and Grand Trunk argue that their Counterclaim / Third-Party Claim for breach of contract specifically alleges that Miller "commenc[ed] such employment in a similar role as his role at Illinois Central," which included "engaging in competitive business activities within the United States, and within the two-year restricted period." (Counterclaim / Third-Party Claim at 34 ¶ 88).

Upon review, although it appears that the Counterclaims / Third Party Claims may have an internal inconsistency, Defendants and Grand Trunk do assert that Miller not only accepted the Vice President of Operations position (before withdrawing it) and also commenced employment with CP in a similar role and engaged in competitive business activities within the two-year restricted period. (*See id.*) The SERP language states that Miller must not do as follows for a period of two years after departing the company:

> . . . [E]ngage in any Competitive Business, or in any way be employed by, associated or in any manner connected with any Competitor, in any position, role or area of his responsibility similar to those for which the Participant had responsibilities in his or her last five (5) years of employment with the Company.

---

[7]   The initial Complaint stated that Miller "withdrew his acceptance of employment at CP and did not begin employment with CP." (Compl. ¶ 58). It further alleged that, at that time, Miller was "unemployed." (*Id.*) The Second Amended Complaint stated that "Miller withdrew his acceptance of employment at CP and did not begin employment with CP in the position of Vice President of U.S. Operations . . . ." (Am. Compl. ¶ 58). His employment status continued to evolve going forward.

(Counterclaim / Third-Party Claim at 26 ¶ 38 & Exh. 2; *see also* Counterclaim / Third-Party Claim at 28 ¶ 48 – 29 ¶ 49 (alleging that the non-compete language under the LTIP and RSU/PTU Plans are substantially similar). Accordingly, the Counterclaim / Third-Party Claim for breach of contract does adequately allege that Miller violated the SERP non-competition covenant and other applicable covenants not to compete. Thus, it is RECOMMENDED that the Counterclaim / Third Party Claim for breach of contract should not be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

In the alternative, the parties dispute whether the Counterclaim / Third-Party Claim should be construed as one for anticipatory repudiation of the contract and whether such a claim is adequately plead. Miller contends that the allegation that he "imminently intends to breach" the non-compete language does allege an anticipatory breach but that it fails as a matter of law. Defendants and Grand Trunk assert that they are allowed to recover under an anticipatory breach theory and that they have properly plead such a claim.

Upon review, anticipatory repudiation under Illinois law requires "a positive and unequivocal manifestation of a party's intent not to render the performance promised under the contract when the time fixed in the contract arrives." *Bituminous Cas. Corp. v. Commercial Union Ins. Co.*, 652 N.E.2d 1192, 1197 (Ill. App. Ct. 1st Dist. 3d Div. 1995) (citation omitted). "Doubtful and indefinite statements that performance may or may not take place are not enough to constitute anticipatory repudiation." *In re Marriage of Olsen*, 528 N.E.2d 684, 686 (Ill. 1998) (citation omitted). Miller contends that his withdrawn acceptance constitutes an indefinite statement of his intention. Defendants and Grand Trunk argue that "signing an offer of employment is . . . a manifest intention of employment." Upon review, it is RECOMMENDED

19

that the Counterclaim / Third-Party Claim's allegation that Miller accepted employment is sufficiently unequivocal to allege a claim of anticipatory breach and survive a Rule 12(b)(6) motion.

Miller also contends that Defendants and Grand Trunk may not pursue a claim for unjust enrichment because they have alleged that a contract exists between the parties. *See Sherman v. Ryan*, 911 N.E.2d 378, 399 (Ill. App. Ct. 1st Dist. 3d Div. 2009) (citation omitted) (concluding that a claimant for unjust enrichment must also plead the absence of justification and the absence of a remedy provided by law). Defendants and Grand Trunk argue that Rule 8 of the Federal Rules of Civil Procedure permits pleading of alternative theories of recovery. *See id.* ("A party may state as many separate claims or defenses as it has, regardless of consistency.")  Here, it is RECOMMENDED that Rule 8 does explicitly allow such pleading in the alternative and that the Counterclaim / Third-Party Claim for unjust enrichment should not be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Finally, Miller contends that Defendants and Grand Trunk have failed to plead their claim for fraudulent misrepresentation with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) provides as follows:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  The Sixth Circuit has interpreted Rule 9(b) to require the following allegations: (1) the time, place, and content of the alleged misrepresentation; (2) the fraudulent scheme; (3) the fraudulent intent; and, (4) the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citation omitted).

Here, Miller admits that, on January 21, 2019, when he exercised his stock options, he told Madigan and Jauvin over the phone that he had no intention to leave the company. Defendants and Grand Trunk allege that his scheme and his intent were to provide this fraudulent misrepresentation in order to insure that his stock options were paid to him in advance of informing CN that he sought to violate his non-compete covenants. Defendants and Grand Trunk assert damages in excess of $1 million as a result of the fraudulent misrepresentation. Accordingly, it is RECOMMENDED that Defendants and Grand Trunk have adequately pled their Counterclaim / Third-Party Claim for fraudulent misrepresentation with the particularity required by Rule 9(b) and that, as such, it should not be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**III.    Conclusion**

For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Motion to Dismiss and Second Motion be DENIED AS MOOT. It is further RECOMMENDED that Plaintiff's Third Motion to Dismiss be DENIED.

**SIGNED** this 17th day of December, 2019.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

21